# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD WESLEY THOMAS,<br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA<br>Respondent. | Civil Action No. 12-325 Erie<br>Criminal Action No. 1:08-34<br><br>Senior District Judge Maurice B. Cohill |

## OPINION

Pending before the Court is Petitioner, Ronald Wesley Thomas' (hereinafter "Petitioner" or "Thomas") *pro se* Motion to Vacate under 28 U.S.C. § 2255 [ECF No. 83] filed on December 28, 2012. In his Petition, Thomas asserts that the Court should vacate, set-aside or otherwise correct his sentence as unlawful and unconstitutional under the Fifth, Sixth and Eighth Amendments of the Constitution (due process claims) due to the fact that his attorney, Michael R. Hadley ("Hadley") made errors in his representation of Petitioner thus causing Thomas to be the subject of Ineffective Assistance of Counsel. The Government disagrees stating that there was a valid waiver of appellate rights by Thomas and further there was no miscarriage of justice in the outcome of the case.

### I. Facts

Ronald Wesley Thomas was the subject of a July 15, 2008, two- count indictment where the grand jury charges were as follows: (1) Conspiracy to possess with the intent to distribute and distribution of five (5) kilograms or more of cocaine under 21 U.S.C. § 846; (2) Possession with

1

intent to distribute and distribution of five hundred (500) grams or more of cocaine under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(b)(ii). Thomas' alleged co-conspirator, Carl Demetris Smith, was charged at Count 1 and charged with an additional count, (3) Manufacture, possession with intent to distribute, and distribution of fifty (50) grams or more of cocaine base under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii) [ECF No. 10]. On April 12, 2011, at his arraignment, Thomas plead not guilty as to Counts 1 and 2 [ECF No. 49]. On September 29, 2011 the Court granted Hadley's Motion, on behalf of Thomas, to calculate and clarify Thomas' criminal history [ECF No. 63]. This measure was taken by Hadley to protect Thomas from a greater sentence because of the possibility of his being classified as a career offender.

On January 26, 2012 Thomas pleaded guilty to Count 2 of the indictment at a Change of Plea hearing and submitted his signed plea agreement to the Court [ECF No. 72].

On March 5, 2012 Thomas was sentenced to imprisonment for 60 months followed by a term of supervised release of 5 years [ECF No. 78]. This sentence was according to a statutory mandate for this type of crime and was within the guideline range.

Thomas filed his Motion to Vacate under 28 U.S.C. § 2255 [ECF No. 83] on December 28, 2012, well beyond the 14 day deadline given during his plea hearing. In his Motion he alleges specifically that Hadley misrepresented the plea agreement as the best option when it removed Count 1 and subjected Thomas to conviction for Count 2, Possession with Intent to Distribute and Distribution of Five Hundred (500) grams or more of cocaine. Count 2 carried with it a statutory 5 year minimum sentence and is not subject to the retroactive crack: cocaine reduction in sentence. Further, Petitioner claims that Hadley should have argued that Thomas

2

only possessed Four Hundred (400) grams of cocaine because there was no evidence of the amount of cocaine Thomas transported and Thomas claims that the amount of cocaine could not have been proven had the case gone to trial. Finally, Thomas claims he was simply a mule in the operation and had no other greater role and claims certain life circumstances should have been argued to the Court to allow a variance from the guideline sentence under 18 U.S.C. § 3553 ("Imposition of a sentence"). In Thomas' Pro-Se Motion to Amend his Petition Pursuant to 28 U.S.C. § 2255 [ECF No. 89], he further argues that Defense Counsel should have hired an investigator or performed some level of fact finding into the case. Petitioner alleges that the fact that "Hadley's performance 'fell below an objective standard of reasonableness'" caused him to suffer a deprivation of his Sixth Amendment Right to Counsel. Petitioner requests a "remand for proper resentencing".

The Government responds [ECF No. 92] asserting that Thomas' Motion should be dismissed on the following grounds: (1) the Motion was untimely filed; and (2) Thomas knowingly and voluntarily waived his right to file a Motion to Vacate under 28 U.S.C. § 2255 both in a signed plea agreement and when questioned in open court at the Change of Plea hearing. The Government bolstered its argument by adding that Thomas' claim that he suffered a denial of his Sixth Amendment right to counsel because of ineffective assistance of counsel does not pass either of the two prongs established in Strickland v. Washington, 466 U.S. 668 (1984). Finally, Government asserts there was no miscarriage of justice in the outcome of the case and there was no opportunity for a sentence reduction as Thomas claimed.

## II. Standard of Review

Section 2255 of Title 28 of the United States Code provides a means of collaterally attacking a sentence imposed after a conviction. U.S. v. Cannistraro, 734 F.Supp 1110, 1119 (D. N.J. 1989), aff'd 919 F.2d 137 (3d. Cir. 1990), cert den'd 500 U.S. 916 (1991). Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . " 28 U.S.C. § 2255(a). Relief under this provision is "generally available only in 'exceptional circumstances' to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." U.S. v. Gordon, 979 F.Supp. 337, 339 (E.D. Pa. 1997) (citing Hill v. U.S., 368 U.S. 424, 428 (1962)).

The Court must consider the motion together with all the files, records, transcripts and correspondence relating to the judgment under attack. See 28 U.S.C. § 2255, Rule 4(b) of the Rules Governing Section 2255 Proceedings. A district court considering a § 2255 motion "must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record," U.S. v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)), and a court "abuses its discretion if it fails to hold and evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." Booth, 432 F.3d at 546 (citing U.S. v. McCoy, 410 F.3d 124, 134

4

(3d Cir. 2005). However, the final disposition of a § 2255 motion lies with the discretion of the trial judge, see Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985), and a district court may summarily dismiss a § 2255 motion where the motion, files, and records "show conclusively that the movant is not entitled to relief." U.S. v. Mason, 2008 WL 938784, 1 (E.D. Pa. 2008) (citing Forte, 865 F.2d at 62).

"Section 2255 generally may not be employed to relitigate questions which were raised and considered on direct appeal." U.S. v. DeRewal, 10 F.3d 100, 105 n. 4 (3d Cir. 1993) (internal quotations omitted). Moreover, "if a petitioner has failed to raise an objection at the time of trial and has also failed to raise the issue on direct appeal, then collateral review of that claim is procedurally barred unless the petitioner is able to show 'cause' excusing his procedural default and 'actual prejudice' resulting from the alleged error or violation." Henry v. U.S., 913 F. Supp. 334, 335 (M.D. Pa. 1996), aff'd 96 F.3d 1435 (3d Cir. 1996); see also U.S. v. Essig, 10 F.3d 968, 979 (3d Cir. 1993) (holding that the "cause and prejudice" standard set forth in U.S. v. Frady, 456 U.S. 152 (1982) "applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed"); Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that an "ineffectiveness" claim can be brought in a collateral proceeding under § 2255 regardless of whether the same issue could have been addressed on direct appeal); DeRewal, 10 F.3d at 104. Finally, the collateral remedy available to prisoners under § 2255 "does not encompass all claimed errors in conviction and sentencing." United States v. Addonizio, 442 U.S. 178, 185 (1979). "The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental

5

defect which inherently results in a complete miscarriage of justice'." Id. (quoting Hill, 368 U.S. at 428).

### III. Legal Analysis

#### A. Knowing and Voluntary Waiver.

As an initial matter, the Plea Agreement signed by Petitioner on January 26, 2012 stated on page 2, in paragraph 5, "RONALD WESLEY THOMAS further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction and sentence." [See also ECF No. 90, Transcript of Change of Plea Hearing, at 15, summarizing waiver of appellate rights.]

"A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." U.S. v. Khattak, 273 F.3d 557, 561 (3d Cir. 2001) (citing U.S. v. Mezzanatto, 513 U.S. 196, 201 (1995)). Such waivers are enforceable "provided that they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice." U.S. v. Mabry, 536 F.3d 231, 237 (3d. Cir. 2008), cert. den'd, 129 S.Ct. 2789 (2009) (citing Khattak, 273 F.3d at 561).

A court has "an independent obligation to conduct an evaluation of the validity of a collateral waiver." Mabry, 536 F.3d at 238. Specifically, we must examine (1) the "knowing and voluntary nature" of the waiver, based on what occurred and what the defendant contends, and (2) whether the enforcement of the waiver would work a "miscarriage of justice." Id. at 237. "Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and

voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." Id. at 237-38 (citing Khattak, 273 F. 3d at 563).

With regard to whether the Petitioner's waiver of his right to file "a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence" was knowing and voluntary, we must, at a minimum, "review the terms of the plea agreement and change-of-plea colloquy and address their sufficiency." Mabry, 536 F.3d at 239.

First, as stated above, the plea agreement, which Petitioner signed on January 26, 2012 stated on page 2, in paragraph 5, "RONALD WESLEY THOMAS further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction and sentence." [See also ECF No. 90, Transcript of Change of Plea Hearing, at 15, summarizing waiver of appellate rights.] Second, the dialogue which occurred during the change of plea hearing indicates that Petitioner knew what collateral appeal rights he was waiving and that he did so voluntarily. Specifically, the following discourse took place after Petitioner was sworn in at the January 26, 2012 plea hearing [see ECF No. 90].

The Court asked a series of questions to determine Thomas' competency with regard to his plea: The Court asked if Thomas was under the influence of any drug, medicine, narcotic or alcohol. Thomas responded he takes over-the-counter pain medication for a ruptured disk. He further stated that the medication does not affect his ability to think clearly and know what is going on around him. Thomas was asked, "Do you clearly understand exactly what's happening

here and now?" To which Thomas responded, "Yes, I do." Defense attorney and the attorney for the Government agreed that the Defendant was competent to plead and the Court determined Thomas competent to plead. Id. at 4-5.

The Court explained the rights Thomas would be giving up by pleading guilty and asked if it was still his wish to enter a plea of guilty. Thomas replied, "yes," but it should be noted that Thomas asked about the definition of hearsay at this juncture and said "I am kind of confused about hearsay and I want to really get the understanding about that before I enter my plea." His counsel advised him off the record and the Court asked him if he would still want to go forward with the hearing and Thomas responded, "Yes, I do." Id. 8-9.

The Government read for the record the terms of Thomas' appellate waiver during the appeal:

> At Paragraph A5 the parties set forth the appellate waiver, and Mr. Thomas waives the right to take a direct appeal limited to the following two circumstances: First, if the United States appeals, Mr. Thomas may appeal. Second, if the sentence you impose exceeds the applicable statutory limits or if the sentence unreasonably exceeds the guideline range determined by the Court, Mr. Thomas may take an appeal under that circumstance as well. **Finally, he waives the right to file a motion to vacate sentence challenging, among other things, the adequacy of his counsel, attacking his conviction under Title 28 United States Code Section 2255.**

Id. at 15 (emphasis added).

It was also read on the record that Paragraph C7 of the plea agreement, to which Thomas signed stated, "[T]he parties further agree that with an offense level of 23, criminal history category two, the Defendant's sentencing guideline range is 60, which is the mandatory minimum, to 63 months." Id. at 16. Therefore, Thomas was made aware of the mandatory

8

minimum of 5 years to which he was pleading as early as his change of plea hearing due to the pre-plea presentence report Hadley had requested.

The transcript of the change of plea hearing at pages 21-24 indicates the Government presented its case against Thomas on a factual basis. The Government specifically identified him as a courier and stated that law enforcement officials who intercepted the package delivered by Thomas sent the package to the Pennsylvania State Police Crime Laboratory for testing and law enforcement officials would be able to testify that there was approximately one kilogram of powder cocaine prior to its conversion to crack cocaine. Id. at 24.

Finally, after the plea agreement was read in open court the Court asked Thomas, "Okay. Do you understand you are giving up appellate rights, you are waiving your right to appeal except under very limited circumstances; do you understand that?" Thomas responded, "Yes, I do, I understand." Id. at 17.

Of important note is the Court asked Thomas if he has had ample opportunity to discuss his case with Hadley. Thomas responded, "yes." Id. at 5. The Court asked Thomas if he was satisfied with the job Hadley had done for him to which Thomas responded, "Somewhat, yes." Id.

Thomas signed a change of plea endorsement at the hearing to which Hadley countersigned and the Court accepted Thomas' plea of guilty to Count 2 of the indictment.

It is evident from the transcript of the change of plea hearing as well as the documentation of the plea agreement and change of plea endorsement that Thomas understood the proceeding, had the ability to question things he didn't understand, accepted the facts of the case as presented by

9

the Government, said he understood that the Court had the discretion to sentence him as it saw fit, understood that the crime to which he was pleading carried a mandatory 5-year minimum sentence, and he never indicated that he was unhappy with his counsel's advice. It is the Court's conclusion that Petitioner had a complete understanding of his plea agreement and Petitioner's waiver of his right to bring a collateral appeal was knowing and voluntary.

### B. Miscarriage of Justice.

The next step in our analysis is to determine whether enforcement of the waiver "would work a miscarriage of justice in this case." Mabry, 536 F.3d at 239. In so considering, a court is to use a "common sense approach" and "look to the underlying facts to determine whether a miscarriage of justice would be worked by enforcing the waiver. . . " Id. at 242-43. There is no identified list of specific circumstances to consider before invalidating a waiver as involving a miscarriage of justice. Id. The United States Court of Appeals for the Third Circuit has "endorsed the methodology of the Court of Appeals for the First Circuit," and instructed that we should consider "the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result . . ." Id. at 242-43 (quoting U.S. v. Teeter, 257 F.3d 14, 25 (1st Cir. 2001)).

In his Motion, Thomas asserts that he was deprived his Constitutional rights of due process and more specifically, his 6th Amendment Right to Assistance of Counsel for three reasons: (1) Attorney Hadley provided incompetent and erroneous advice, which led Thomas to

unintelligently agree to a plea bargain, namely Thomas claims Hadley should have had Thomas plead to a Count that included crack so that he could benefit from the Fair Sentencing Act's 1:1 ratio reduced sentencing, and, that, later at sentencing, Hadley should have argued for a variance based on 18 U.S.C. § 3553 factors ; (2) Hadley did not challenge the government's factual propositions by hiring an investigator to establish that Thomas was a mere "mule" in the drug operation and that only 400 grams of cocaine could be attributable to Thomas; and (3) Under Strickland v. Washington, 466 U.S. 668 (1994) Hadley's performance fell "below an objective standard of reasonableness," and Thomas was "clearly prejudiced."

The Court will address Thomas' claims under the guidance provided by the court in Strickland. Under the first prong of Strickland, Thomas must show that counsel's representation "fell below an objective standard of reasonableness." United States v. Cross, 308 F.3d 308, 315 (3d Cir. 2002) (citing Strickland, 466 U.S. at 688). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. However, there is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 689. To establish Strickland's second prong, Thomas must show that counsel's deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

It is not entirely clear from Petitioner's Motion whether he feels he would have benefitted from a more favorable sentence had he proceeded to trial, or whether he is simply asserting that

11

Attorney Hadley did not represent him properly in the plea negotiations and at sentencing. In either case, the Court does not believe that Attorney Hadley's representation fell below a reasonable standard, nor do we believe that Hadley's representation of Thomas prejudiced him in any way.

Thomas' was charged at Counts 1 and 2 of the indictment [ECF No. 10] with Conspiracy and Possession with Intent to Distribute and Distribution of Cocaine. His co-defendant, Smith, was charged at Count 1 with Conspiracy, but was also charged at Count 3 with Possession with Intent to Distribute Crack Cocaine, after having cooked the powder cocaine provided to him by Thomas. The reduction in sentence allowable in a crack charge, to which Thomas refers in his Motion, was not available to Thomas due to the fact that he was not charged with Count 3 and his assertion that Hadley misled him in his plea to Count 2 is unfounded. In fact, Hadley negotiated a plea agreement in which Count 1 was dropped and Thomas only plead guilty to Count 2 causing his sentencing exposure to be significantly reduced from that which would be possible had the case gone to trial. Had Thomas' case gone to trial the conspiracy charge alone carried a mandatory minimum sentence of 10 years imprisonment as opposed to the mandatory minimum of 5 years imprisonment sentenced for the Count 2 Distribution charge. Further, at trial the Government could have pursued a sentence enhancement based on Thomas' prior criminal history. Thus, it is the Court's determination that Attorney Hadley acted in a reasonably prudent fashion when negotiating Thomas' plea and in fact eliminated the risk of what could have been a sentence much more substantial than 5 years imprisonment.

Further, with such a plea negotiation on the table, an investigation into the facts of the case, such as whether Thomas' was merely a "mule" and not a co-conspirator, or whether he was carrying 400 or 500 grams of cocaine would have been extraneous dicta and not pertinent to the negotiation, plea or the subsequent sentencing. Count 1, the Conspiracy charge, was removed from consideration under the plea agreement, therefore, whether or not Thomas was a "mule" or a more active participant in a conspiracy was inconsequential to his sentence under the distribution charge at Count 2. As for the amount of cocaine Thomas' was carrying, the Government, in its recitation of the facts, stated that laboratory testing had been performed on the crack that determined the amount of cocaine transported by Thomas was 1000 grams/1 kilogram. A reasonable Attorney facing those facts could make the determination that an argument to the contrary would not be effective. Therefore, it is the decision of this Court that Hadley acted as a reasonable attorney would in his representation of Thomas in plea negotiations and the resulting sentence was fair and not prejudicial to Thomas.

As a final note, Thomas in his Motion, asserts that he should have benefitted from a variance under 18 U.S.C. § 3553, which takes into account factors such as mental, physical and emotional disorders. Again this argument fails because of the statutory mandate of a minimum 5 years imprisonment with the cocaine distribution charge at Count 2, a variance is not a consideration taken into account by the Court.

### IV. Certificate of Appealability

The remaining issue before this Court is whether a certificate of appealability ("COA") should be issued with respect to the Petitioner's § 2255 motion. A court should issue a COA

13

where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). We find that jurists of reason would not find our assessment of Petitioner's claims, constitutional or otherwise, to be debatable or wrong. Therefore, this Court will deny certificate of appealability.

V. **Conclusion**

This Court having held, for the reasons set forth above, that Petitioner knowingly and voluntarily waived his right to file a collateral appeal and that enforcement of said waiver would not work a miscarriage of justice in this case, Petitioner's Motion to Vacate under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [ECF No. 83, as amended ECF No. 89] is DENIED. Moreover, a Certificate of Appealability will not be issued with respect to this Motion. An appropriate Order will follow.

August 5, 2013

Maurice B. Cohill, Jr.
Senior United States District Court Judge
Western District of Pennsylvania

cc:  Ronald Wesley Thomas
18906-039
Hazelton
U.S. Penitentiary
Inmate Mail/Parcels
P.O. Box 2000
Bruceton Mills, WV 26525

14